**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

United States of America,

      Plaintiff,

v.

Gregory Lamont Hopkins (01),                       Criminal No. 11-230 (DWF/SER)
Derrick Bonnick (03)
Manuel Dario Ramos (04),
Talaysha Johnson (05),                            **REPORT AND RECOMMENDATION**
Mohammad Mazhary (06),
Desmond Brown (07),
Gregory Keaton (08),

      Defendants.

      Jeffrey S. Paulsen, Esqs., United States Attorney's Office, 600 U.S. Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415, for Plaintiff.

      John C. Brink, Esq., 331 2nd Avenue South, Suite 110, Minneapolis, MN 55401, for Defendant Gregory Lamont Hopkins (01).

      Raymond A. Wood, Esq., Wood Law Office, 1922 Upton Avenue North, Minneapolis, MN 55411, for Derrick Bonnick (03).

      Leon A. Trawick, Esq., Trawick & Smith, PA, 331 Second Avenue South, Suite 515, Minneapolis, MN 55401, for Defendant Manuel Dario Ramos (04).

      Wolanda R. Shelton, Esq., Shelton Law Offices, LLC, 716 Co. Rd. 10 NE #220, Blaine, MN 55434, appeared on behalf of Defendant Talaysha Johnson (05).

      Daniel C. Guerrero, Esq., Meshbesher & Spence, Ltd., 1616 Park Avenue South, Minneapolis, MN 55404, appeared on behalf of Defendant Mohammad Mazhary (06).

      Kevin W. DeVore, Esq., Larson King, LLP, 30 East 7th Street, Suite 2800, St. Paul, MN 55101, appeared on behalf of Defendant Desmond Brown (07).

      Daniel Mohs, Esq., Law Office of Daniel Mohs, 9218 Lake Avenue South, Spicer, MN 56288, appeared on behalf of Defendant Gregory Keaton (08).

STEVEN E. RAU, United States Magistrate Judge

The above-captioned case comes before the undersigned United States Magistrate Judge on Defendant Gregory Lamont Hopkins's (01) Motion to Suppress All Electronic Surveillance Evidence and Any Evidence Derived Therefrom [Doc. No. 115], Motion to Suppress Any Evidence Obtained as a Result of Any Illegal Identification Procedures [Doc. No. 126], and Motion to Suppress Any Evidence Obtained as a Result of Any Illegal Searches or Seizures [Doc. No. 128]; Defendant Manuel Dario Ramos' (04) Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Doc. No. 111], Motion to Suppress Statements, Admissions and Answers [Doc. No. 112], and Motion for Suppression of Electronic Surveillance and Wiretapping [Doc. No. 119]; Defendant Desmond Brown's (07) Motion for Severance [Doc. No. 138], Motion to Suppress Defendant's Statements [Doc. No. 140], and Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Doc. No. 141].  This case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.[1]  For the reasons that follow, the court recommends the motions be denied.

**I.     BACKGROUND**

The Government filed an Indictment against Defendants on July 19, 2011 [Doc. No. 5], and a Superseding Indictment on August 17, 2011 [Doc. No. 49].  The Superseding Indictment charges: all Defendants with Conspiracy to Distribute Controlled Substances, including crack, cocaine, and marijuana; Defendant Gregory Lamont Hopkins (01) ("Hopkins") with multiple counts of Distribution of Crack Cocaine, and Felon in Possession of a Firearm; Derrick Bonnick (03) ("Bonnick") with Possession with Intent to Distribute Crack Cocaine, and Felon in

---

[1] The Court has addressed Defendants' non-dispositive motions in a separate Order.

Possession of a Firearm; Manuel Dario Ramos (04) ("Ramos") with multiple counts of Distribution of Cocaine, and Felon in Possession of a Firearm; Desmond Brown (07) ("Brown") with Possession with Intent to Distribute Crack Cocaine, and Possession with Intent to Distribute Cocaine; and Gregory Keaton (08) ("Keaton") with Distribution of Crack Cocaine, Distribution of Cocaine, Possession with Intent to Distribute Crack Cocaine, and Possession with Intent to Distribute Cocaine.

This Court held a pre-trial motions hearing on September 14, 2011. No witnesses testified at the hearing. The Court received eight exhibits into evidence: Government Ex. 1 - application for a wiretap on Target Telephone #1; Government Ex. 2 – application for extension of the wiretap on Target Telephone #1; Government Ex. 3 – amended application for the extension of the wiretap on Target Telephone #1; Government Ex. 4 – application for the wiretap on Target Telephone #2; Government Ex. 5 – search warrant for 3850 Lyndale Ave. North in Minneapolis, MN; Government Ex. 6 – search warrant for 1201 East 66th Street, Richfield, Minnesota; Government Ex. 7 – search warrant for 1600 East 80th Street, Apartment #2, Bloomington, MN; and Government Ex. 8 – search warrant for 5729 Newton Ave South, Minneapolis, MN. This matter is set for trial before United States District Judge Donovan W. Frank on November 21, 2011.

### II.   FACTS

#### A. Wiretap Applications

Bloomington police executed a search warrant on October 28, 2010, and arrested an individual for possession of crack cocaine and felon in possession of a firearm. (Ex. 1, Ocken Aff. at ¶18). The arrested individual became a DEA confidential informant (hereinafter "CS1"), and told law enforcement officers that s/he had been purchasing controlled substances from

3

Hopkins for several months. CS1 stated that Hopkins sold multi-ounce quantities of crack cocaine and firearms out of his residence at 3850 Lyndale Ave. North in Minneapolis and from his place of employment, Exhaust Pro's, located at 1201 East 66th Street in Richfield. (*Id.* at ¶ 19-20). CS1 stated s/he contacted Hopkins via telephone number 612-743-3126. CS1 stated s/he grew up with Hopkins and they were longtime friends. (*Id.* at ¶ 22). CS1 informed officers that s/he had seen as much as nine ounces of crack cocaine in Hopkins' residence at one time and had seen customers purchase crack at Hopkins' residence. (*Id.*). According to CS1, Hopkins was the leader of the Minneapolis-based Raymond Avenue Crips street gang, of which CS1 was a member, and Hopkins was a source of crack and firearms for other members of the gang. (*Id.*). Over the course of the investigation, CS1 completed five controlled buys of narcotics and firearms for law enforcement officers and provided information about Hopkins' and other co-conspirators' narcotics dealings. (*Id.* at ¶ 24-32). Telephone calls ordering narcotics from Hopkins that were recorded with CS1's permission were also obtained. (*Id.*).

During the investigation, law enforcement agents also: did some limited surveillance of Hopkins' home and Exhaust Pro's; obtained a pen register and tap and trap device for Hopkins' phone; analyzed Hopkins' frequent phone contacts, including various individuals with past narcotics offenses; and analyzed financial records. (*Id.* at ¶ 40, 49-57).

On February 11, 2011, Assistant United States Attorney Jeffrey Paulsen applied for a wiretap for a Sprint cellular telephone with phone number 612-743-3126, subscribed to Hopkins at 3850 Lyndale Ave. North in Minneapolis (hereinafter "Target Telephone #1"). (Ex. 1). DEA Special Agent Travis Ocken provided a 37-page Affidavit in support of the wiretap application, averring that Hopkins was using the phone in commission of crimes of drug conspiracy and trafficking, money laundering, and firearm crimes. (*Id.* at Ocken Aff. at ¶ 5). Ocken stated that

4

interception of calls to and from Target Telephone #1 would provide information about nature and scope of the alleged drug conspiracy, the location of contraband, the identities of co-conspirators, and other details of the drug trafficking organization. (*Id.* at ¶ 9). Ocken's Affidavit also asserted that a wiretap was necessary because normal investigative techniques had been tried and failed, were unlikely to succeed if attempted, or were too dangerous to attempt, and that a wiretap was necessary in order to obtain additional admissible evidence. (*Id.* at ¶ 9(d); 48-57). District Court Judge Patrick J. Schiltz authorized wire interceptions over Hopkins' phone, Target Telephone #1. (Ex. 1, Order).

On March 11, 2011, Paulsen applied for a 30 day extension of the wiretap on Target Telephone #1. (Ex. 2). Ocken provided another affidavit, 31-pages in length, in support of the application for the wiretap extension. In the affidavit, Ocken detailed the results of the investigation from the previous month, including various phone calls regarding narcotics transactions, physical surveillance of Hopkins' residence and business, physical surveillance and remote camera surveillance of Hopkins' customers, an unsuccessful mail cover, and financial records requests. (*Id.*). Judge Schiltz authorized the extension of the wiretap. (*Id.*). Paulsen filed an amended application for the wiretap extension because the electronic serial number for Target Telephone #1 changed and the officers did not learn of the change until after Judge Schiltz authorized the extension. (Ex. 3). Judge Schiltz granted the amended application. (*Id.*).

Paulsen applied for a wiretap for Sprint cellular telephone with phone number 612-636-2163, subscribed to Quincy Nalls ("Nalls") at 5749 Longfellow, Minneapolis, Minnesota, (hereinafter "Target Telephone #2"). (Ex. 4). Officers had previously intercepted calls between Nalls and Hopkins regarding drug transactions on Target Telephone #1, and those calls were detailed in Exhibit 2. Ocken provided a 37-page affidavit in support of the wiretap application

for Target Telephone #2 to investigate drug and money laundering offenses. (*Id.*). Ocken's Affidavit repeated much of the information in the previous wiretap applications, including the controlled buys by CS1 and CS1's identification of Nalls as a supply source of cocaine and marijuana. (*Id.*). The Affidavit also detailed numerous intercepted phone calls between Hopkins and Nalls, and between Hopkins and others regarding Nalls. (*Id.*). On March 28, 2011, Judge Schiltz authorized wire interceptions over Target Telephone #2. (Ex. 4, Order).

### B. Search Warrant Applications

On July 28, 2011, the Government applied for and received four search warrants in this matter. (Ex. 5-8; see also Doc. Nos. 52, 60, 62, and 66). The search warrants were for: (1) 3850 Lyndale Avenue North in Minneapolis, Minnesota, (Hopkins' residence); (2) 1201 East 66th Street, Richfield, MN, (Hopkins' business, Exhaust Pro's); (3) 1600 East 80th Street, Apartment #2, Bloomington, MN, (Ramos' Residence); and (4) 5729 Newton Avenue South, Minneapolis, MN, (Brown's residence). (*Id.*). In support of the warrant applications, Ocken provided a 29-page affidavit detailing the information and evidence that the investigation had produced to date. (*Id.*). This information and evidence included: debriefings and interviews with two confidential sources, CS1 and CS2; controlled purchases by CS1 and CS2 of drugs and firearms; physical and electronic surveillance of the properties to be searched and the suspected conspirators; the intercepted telephone calls on Target Telephone #1 and #2; interviews with individuals arrested following surveillance at Exhaust Pro's; trash pulls and searches; vehicle and tax record checks; and canine sniffs at the doors of certain residences. (*Id.*). Records from the Secretary of State showed Defendants Hopkins, Defendant Mazhary and Reinor Bonnick as owners of a business entity, GMR Motor, LLC, whose registered office was at the address of Exhaust Pro's. (*Id.*).

In each warrant application, Ocken sought permission to seize: drugs and drug

paraphernalia; documents and financial records related to drug trafficking; electronics; currency, precious metals and other financial instruments; photographs of conspirators, assets, or controlled substances; indicia of occupancy or ownership of the premises; weapons and firearms; and any locked or closed containers believed to contain any of the other listed evidence. (*Id.*). Magistrate Judge Jeffrey Keyes granted the warrant applications. (*Id.*). The warrants were executed and officers seized firearms, financial documents and other records, drug paraphernalia, cell phones, currency, and controlled substances. (*Id.*).

### III. DISCUSSION

#### A. Motions to Suppress Searches

Defendants Hopkins, Ramos, and Brown all challenge the search warrants. Defendants' counsel asked this Court to conduct a "four corners" review of the search warrants, but failed to identify specific deficiencies in the warrant applications. After reviewing the warrants and the supporting affidavits, this Court concludes that probable cause adequately supports the warrants, and that, even if probable cause did not support the warrants, then the *Leon* good-faith exception would preclude suppression of the evidence.

The Fourth Amendment requires probable cause to support a search warrant. *United States v. Stults*, 575 F.3d 834, 843 (8th Cir. 2009). When there is no testimony or exhibits presented to a magistrate judge regarding a search, the probable cause determination is made only on that information that is found within the four corners of the affidavit supporting the warrant. *United States v. Hudspeth*, 525 F.3d 667, 674 (8th Cir. 2008); *United States v. Olvey*, 437 F.3d 804, 807 (8th Cir. 2006). "If an affidavit in support of a search warrant sets forth sufficient facts to lead a prudent person to believe that there is a fair probability that contraband or evidence of a crime will be found in a particular place, probable cause to issue the warrant has

been established." *Hudspeth*, 525 F.3d at 674 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *Wyoming v. Houghton*, 526 U.S. 295, 302 (1999) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978)). There must also be a nexus between the items to be seized and criminal behavior. *Warden v. Hayden*, 387 U.S. 294, 306-07 (1967)). Whether probable cause supports a search warrant is a determination requiring an examination of the totality of the circumstances; the reviewing court should pay "great deference" to the issuing judge. *Stults*, 575 F.3d at 843 (quoting *United States v. Kattaria*, 553 F.3d 1171, 1175 (8th Cir. 2009)).

A court "may properly rely on normal inferences drawn by the surrounding circumstances and the allegations of facts contained in the affidavit." *United States v. Carlson*, 697 F.2d 231, 238 (8th Cir. 1983); *see also United States v. Thompson*, 210 F.3d 855, 860 (8th Cir. 2000). Likewise, in preparing affidavits in support of a warrant reasonable inferences may be made. *United States v. Thompson*, 210 F.3d 855, 860 (8th Cir. 2000). An officer's "averment based upon his experience that drug traffickers often keep in their residences records of their illicit activity, large amounts of cash, assets purchased with the proceeds of drug transactions, and guns to protect their drugs and cash, [can provide a] judge with a substantial basis for finding probable cause to search [the defendant's] residence." *United States v. Luloff,* 15 F.3d 763, 768 (8th Cir. 1994), cited in *United States v. Walker*, 324 F.3d 1032, 1038 (8th Cir. 2003).

The *Leon* good-faith exception modifies the rule that courts should exclude evidence obtained in violation of the Fourth Amendment. *United States v. Leon*, 468 U.S. 897, 923 (1984). Under *Leon,* "evidence seized pursuant to a search warrant . . . that is later determined to

be invalid, will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable." *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007); *United States v. Ross*, 487 F.3d 1120, 1122 (8th Cir. 2007) (both citing *Leon*, 468 U.S. at 923). If an officer relies on a warrant for which the supporting affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," then the *Leon* exception is inapplicable. *Leon*, 468 U.S. at 923; *Ross*, 487 F.3d at 1122.

When an affidavit fails to establish a nexus between a residence and contraband, it still would not be "entirely unreasonable" for the executing officer "to believe that such an inference was permissible." *United States v. Carpenter*, 341 F.3d 666, 671 (8th Cir. 2003); *see also Proell*, 485 F.3d at 432. Courts must apply the good-faith exception "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope." *Leon*, 468 U.S. at 920. Ordinarily, "an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient . . . Penalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *Id.* at 921.

1. Hopkins

    a. Standing

Hopkins moves to suppress all eight of the federal search warrants issued in this matter [Doc. No. 128]. The Government responds that Hopkins only has standing to challenge the search warrants issued for his residence at 3850 Lyndale Avenue North in Minneapolis (Ex. 5), and his business/place of employment, Exhaust Pro's, at East 66th Street in Richfield (Ex. 6). This Court agrees.

"Because [F]ourth [A]mendment rights are personal, a person challenging a search warrant must demonstrate that he or she has a legitimate expectation of privacy in the area searched." *United States v. Wiley*, 847 F.2d 480, 481 (8th Cir. 1988); *see also United States v. Salter*, 358 F.3d 1080, 1084 n. 2 (8th Cir. 2004). An individual who satisfies the burden of establishing a legitimate expectation of privacy has standing to challenge a search. *Wiley*, 847 F2d at 481. A defendant who "fails to prove a sufficiently close connection to the relevant places or objects searched . . . has no standing to claim that they were searched or seized illegally." *United States v. Lindsey*, No. 10-15, 2010 WL 4822939, *30 (D. Minn. July 20, 2010) (quoting *United States v. Gomez*, 16 F.3d 254, 256 (8th Cir. 1994)).

Other than his residence and business, Hopkins has not offered any evidence suggesting he had an expectation of privacy in any of the other areas searched. He has not met the burden of establishing a privacy right and does not have standing to challenge those searches. To the extent Hopkins' motion seeks to suppress evidence from the six searches that were not his home or business, the motion should be denied.

b. Probable Cause

This Court concludes that the search warrants for Hopkins' residence and business were based on probable cause, as set forth in the warrant application and Agent Ocken's 29-page affidavit. Ocken's affidavit extensively describes Hopkins' alleged involvement in drug and firearm trafficking activities, and provides a nexus between those activities and the locations to be searched. Ocken's Affidavit detailed: multiple controlled buys at Hopkins' residence and business; debriefings from two confidential sources describing Hopkins' involvement in drug transactions; intercepted telephone calls, including calls from customers purchasing drugs from Hopkins at Exhaust Pro's; CS1's visual observation of drugs in the searched locations; pen

10

register data showing calls to and from individuals with past drug offenses; and physical and electronic surveillance showing high volumes of short term traffic at both locations. Based on Ocken's training and experience, he observed that it is common for drug traffickers to maintain evidence and proceeds from their drug trafficking activities in their residences (Ex. 5 and 6, Ocken Aff. at ¶ 5). The warrant also properly and sufficiently identified the location of the search and the items to be seized. The totality of the information contained in the warrant applications provides probable cause for the searches.

Even if the search warrants were not supported by probable cause, the *Leon* good-faith exception applies. The warrants were not "so lacking in indicia of probable cause" that the executing officers' reliance on the warrants would be unreasonable. The affidavits provided significant details connecting Hopkins to drug trafficking activities at his home and business. It was objectively reasonable for the officers to rely on the validity of the search warrants and, therefore, the Court recommends that Defendant Hopkins' motion to suppress be denied.

2. Ramos

Defendant Ramos moves to suppress evidence seized in the search of his residence at 1600 80th Street, Apt. #2, in Bloomington, Minnesota. Ocken's Affidavit, as it does for the other defendants, supplied probable cause for the search of Ramos' residence. The Affidavit described: confidential sources identifying Ramos as a cocaine supply source; multiple controlled buys of cocaine and firearms from Ramos, originating at Ramos' residence; and a positive dog sniff outside Ramos' apartment. This information sufficiently established probable cause that Ramos' residence would contain evidence related to the alleged drug-trafficking conspiracy. Even if the search warrant for Ramos' residence was not supported by probable cause, the *Leon* good-faith exception would apply because the warrant was not "so facially

11

lacking in probable cause as to preclude the executing officers' good faith reliance thereon." *Leon*, 468 U.S. at 923. Ramos' motion to suppress should be denied.

   3. Brown

Defendant Brown also moves to suppress evidence seized in the search of his residence at 5729 Newton Avenue South, Minneapolis, Minnesota. As with the other searches, the warrant application and Ocken's Affidavit provided probable cause for the search of Brown's residence. Agent Ocken described: Brown's connection to a specific drug transaction with Hopkins and involving Brown's residence; intercepted conversations between Brown and Hopkins regarding drug transactions; a trash pull at Brown's residence uncovering baggies with suspected crack/cocaine residue; and confidential source interviews and surveillance indicating Brown was a close associate and distribution partner of Hopkins. This information was sufficient to establish probable cause that Brown's residence would contain evidence relating to the alleged drug trafficking. Even if the search warrant was not supported by probable cause, the *Leon* good-faith exception would apply because the officers who executed the warrant relied in good faith on the existence of a valid warrant. Ocken's Affidavit detailed Brown's involvement in Hopkins' alleged drug conspiracy and linked Brown's residence to those activities. The affidavit and warrant were not "so lacking in indicia of probable cause" as to make it "entirely unreasonable" for officers to rely on the warrant. Brown's motion to suppress should be denied.

  **B. Motions to Suppress Electronic Surveillance**

Defendants Hopkins and Ramos have moved to suppress the fruits of the wiretaps used in this case [Doc. Nos. 115 and 119]. This Court is asked to conduct a "four corners" review of the wiretap applications. Hopkins and Ramos failed to specify any particular deficiencies in the wiretap applications; neither the defendants nor the Government requested post-hearing briefing

on the issue. Because Defendants Hopkins and Ramos request only a "four corners" review of the wiretap, their challenge is limited to whether probable cause supports the wiretaps and whether necessity requirement of 18 U.S.C. § 2518 is satisfied. Probable cause is present and the Government satisfied the necessity requirement.

1. Probable Cause

Courts evaluate probable cause for the issuance of a wiretap under the same standard used to evaluate probable cause for the issuance of a search warrant. *United States v. Fairchild*, 189 F.3d 769, 775 (8th Cir. 1999); *United States v. Falls*, 34 F.3d 674, 681 (8th Cir. 1994). Probable cause exists when, given the totality of the circumstances, a reasonable person would believe there is a fair probability that a wiretap will uncover evidence of a crime. *Fairchild*, 189 F.3d at 775 (citing *Gates*, 462 U.S. at 236). When determining whether probable cause exists, the court does not independently evaluate each piece of information, but, rather, considers all of the facts for their cumulative meaning. *United States v. Allen*, 297 F.3d 790, 794 (8th Cir. 2002).

Ockens' wiretap affidavits described target subjects, basis of information, and the facts establishing probable cause, extensively. Hopkins and Nalls are tied to narcotics activity and the use of their cellular telephones in the furtherance of such activity in the Affidavits. Ocken detailed multiple phone calls to individuals with past narcotics arrests/convictions, controlled buys initiated on the target telephones, and information from informants linking Hopkins and Nalls to drug trafficking. The wiretap extension also specified recorded conversations about drug transactions. Based on all of these facts, the Court concludes that a sufficient basis for the issuing judge to conclude that there was probable cause existed that Hopkins and Nalls were using the target telephones in the furtherance of narcotics crimes.

2. Necessity

The necessity requirement for wiretap applications requires "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). Before granting a Title III application, a court must find that "normal investigative procedures" have failed or "reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c); *United States v. West*, 589 F.3d 936, 939 (8th Cir. 2009) The necessity requirement restricts "wiretaps to those which are necessary as well as reasonable." *United States v. Daly*, 535 F.2d 434, 438 (8th Cir. 1976). "Congress did not require the exhaustion of 'specific' or 'all possible' investigative techniques before wiretap orders could be issued." *Id.*; *United States v. Thompson*, 210 F.3d 855, 858-59 (8th Cir. 2000). The Eighth Circuit holds the necessity requirement as assurance "that wiretaps are not routinely employed as the initial step in an investigation." *United States v. Jackson*, 345 F.3d 638, 644 (8th Cir. 2003) (citing *Thompson*, 210 F.3d at 859). Law enforcement officers must first attempt some typical investigative techniques, but they are not required to exhaust all possible investigative techniques. *Daly*, 535 F.2d at 438; *United States v. Barnes*, 47 F.3d 963, 965 (8th Cir. 1995). When drug conspiracies are being investigated, law enforcement officers must establish that conventional investigatory techniques have not been successful in exposing the full extent of criminal activity in order to comply with the necessity requirement. *Jackson*, 345 F.3d at 644; *Thompson*, 210 F.3d at 859.

The wiretaps and the extension for the wiretap for Target Telephone #1, were not utilized as the initial step in the investigation of the Hopkins organization. Agent Ocken explained what investigative techniques had been used to uncover the identities of the individuals allegedly

involved in drug and firearm trafficking with Hopkins and to determine the nature and scope of the alleged drug conspiracy, the location of contraband, and other details of the drug trafficking organization. In all four Affidavits, Ocken explained how the use of confidential sources, physical surveillance, undercover officers, pen registers, toll records, trash searches, mail covers, search warrants, and subpoenas had proven inadequate or infeasible. The Affidavits establish that the wiretap applications were not the first investigatory method that law enforcement officers used. The applications identified what other investigative procedures had been tried and failed or why such techniques were reasonably unlikely to succeed. The Court concludes the applications establish fairly that officers exhausted attempts to use normal traditional investigative techniques to determine the scope and nature of the alleged drug conspiracy. The interceptions of Target Telephone #1 and #2 were necessary to fully investigate the extent of the conspiracy and to learn the identities of the conspirators. The Court recommends denial of the suppression of the wiretaps.

### 3. *Leon* Good-Faith Exception

The Eighth Circuit has held that *Leon* applies to Title III wiretap authorization orders. *United States v. Moore*, 41 F.3d 370, 376 (8th Cir. 1994); *see also United States v. Brewer*, No. 05-4942, 204 Fed. App'x 205, 208, 2006 WL 3147558, *3 (4th Cir. Nov. 3, 2006) (table decision); *United States v. Malekzadeh*, 855 F.2d 1492, 1497 (11th Cir. 1988); *United States v. Pantoja*, No. 10-339, 2011 WL 1363979, *3 (D. Minn. March 24, 2011). In *Moore*, the Eighth Circuit held that the language in § 2518(10)(a), makes suppression in a Title III application a discretionary decision. *Id.*

Even if the electronic surveillance applications in this case did not demonstrate the requisite necessity, *Leon* would apply. The Title III applications and Affidavits were extensive

and detailed, as were the Orders granting the applications. The Affidavits did not lack in establishing necessity or probable cause such that it would be unreasonable for officers rely on the Orders. Hopkins' and Ramos' motions to suppress should be denied.

### C. Motions to Suppress Statements

Defendants Brown and Ramos also moved to suppress statements, admissions and answers [Doc. Nos. 112 and 140].[2] At the hearing on these motions, the Government indicated that neither Defendant Brown nor Ramos made any statements in this matter. The motions are moot.

### D. Motion to Suppress Identifications

Defendant Hopkins moved to suppress any evidence obtained as the result of any illegal identification procedures [Doc. No. 126]. There is no evidence in the record, nor any testimony in this matter, suggesting that any identification procedures took place with respect to Defendant Hopkins. The motion is moot.

### E. Motion to Sever

Defendant Brown moves to sever his trial from his co-Defendants. Brown's boilerplate motion does not set forth any particular arguments in favor of severance. The Government opposes severance, arguing that Defendants are all charged with Conspiracy to Distribute Controlled Substances and individually with related drug and firearm offenses.

With respect to joinder of multiple defendants, an indictment may charge two or more defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). Fed R. Crim. P. 14(a) allows a court to sever a trial if joinder creates prejudice. *Id.* If, under Rule 8,

---

[2] Defendants Hopkins and Bonnick previously moved to suppress statements [Doc. Nos. 94 and 127], but later withdrew those motions [Doc. Nos. 150 and 151].

joinder is proper, then the defendant seeking severance has a "heavy burden" in demonstrating that a joint trial will impermissibly infringe his right to a fair trial. *United States v. Warfield*, 97 F.3d 1014, 1019 (8th Cir. 1996). Repeatedly, the Supreme Court has stated that the federal system prefers joint trials of defendants who are indicted together because joint trials promote efficiency and eliminate the inequity of inconsistent verdicts. *Zafiro v. United States*, 506 U.S. 534, 536 (1993); *see also United States v. Clay*, 579 F.3d 919, 927 (8th Cir. 2009). Severance is appropriate "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro,* 506 U.S. at 539; *United States v. Spotted Elk*, 548 F.3d 641, 658 (8th Cir. 2008)). "Only in an unusual case will the prejudice resulting from a joint trial be substantial enough to outweigh the general efficiency of joinder." *Clay*, 579 F.3d at 927 (citing *United States v. Al-Esawi*, 560 F.3d 888, 891 (8th Cir. 2009)).

In this case, the Superseding Indictment charges all Defendants with the offense of Conspiracy to Distribute Controlled Substances. Absent any specific showing of how joinder would result in prejudice, no basis for severance exists. Brown has not met the "heavy burden" of demonstrating that a joint trial will impermissibly infringe his right to a fair trial. This Court recommends that Brown's severance motion be denied.

## IV. RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant Gregory Lamont Hopkins's (01) Motion to Suppress All Electronic Surveillance Evidence and Any Evidence Derived Therefrom [Doc. No. 115] be **DENIED**;

2. Defendant Gregory Lamont Hopkins's (01) Motion to Suppress Any Evidence Obtained as a Result of Any Illegal Identification Procedures [Doc. No. 126] be **DENIED as moot**;

3. Defendant Gregory Lamont Hopkins's (01) Motion to Suppress Any Evidence Obtained as a Result of Any Illegal Searches or Seizures [Doc. No. 128] be **DENIED**;

4. Defendant Manuel Dario Ramos' (04) Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Doc. No. 111] be **DENIED**;

5. Defendant Manuel Dario Ramos' (04) Motion to Suppress Statements, Admissions and Answers [Doc. No. 112] be **DENIED as moot**;

6. Defendant Manuel Dario Ramos' (04) Motion for Suppression of Electronic Surveillance and Wiretapping [Doc. No. 119] be **DENIED**;

7. Defendant Desmond Brown's (07) Motion for Severance [Doc. No. 138] be **DENIED**;

8. Defendant Desmond Brown's (07) Motion to Suppress Defendant's Statements [Doc. No. 140] be **DENIED as moot**; and

9. Defendant Desmond Brown's (07) Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Doc. No. 141] be **DENIED**.

Dated: October 5, 2011                             s/ Steven E. Rau_____
                                                   STEVEN E. RAU
                                                   United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by **October 19, 2011,** a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.